Cuma per
Johnson, J.
The only ground which it is thought necesscry to notice and decide, is that which calls in question the competency of the witness, Henry Willis, to give evidence in the cause. The defendant’s own account of the transaction is that be contracted with *404 the witness for the loan of $300 from which seventy live dollars were to be deducted for the forbearance for ninety days, and gave him a note for that amount, and received in consideration only one hundred dollars cash and the witness’ note at thirty days for $125. By the terms of the act against usury, the borrower, or party to an usurious contract, is declared to be a good and sufficient witness in law to give evidence of offences against this act,” &c. but it is provided that if the person or persons against whom such evidence is offered to be given, will deny on oath in open Court to be administered, the truth of what such evidence offers to swear against him, then such witness shall not be admitted to be sworn. The preamble of the act points most obviously to the policy as a clue to the meaning. It is apparent that by the terms “ person or persons against whom such evidence was offered to be given,” contained in the proviso, the Legislature intended to designate the party to the original contract, and not one who was necessarily ignorant of the transaction. Regarding Henry Willis then as the original party, and that is the footing on which the defendant puts his objection to his competency, and he was admissible under the act, and defendant ought not to have been permitted to be sworn, if Willis had offered to contradict on oath the facts to which he offered to swear. But this is no ground of complaint on the part of the defendant. The other grounds taken, present nothing more than the credibility of the defendant and the witness Willis; and although it is said that the Recorder did not submit the matter to the jury, it will not be believed that the counsel omitted to do so, and when the evidence was so directly opposed, it is impossible that the jury could have determined the case without deciding upon it. This disposes of the grounds stated; but there are other considerations arising out of the case, to the bene- *405 lit oi‘ which, I think the defendant is entitled, especially as it appears from Willis’ own testimony, that he has practised on him one of the most gross and scandalous frauds that I have ever witnessed. It will be recollected that the defendant offered to swear and did swear that by the contract with Willis he was to give him $75 for the loan, and although Willis in his examination states generally that he acted as the agent of defendant in negocia-ting the note, he is not hardy enough to take upon-himself to deny the truth of this fact, and in this respect the oath of the defendant is not only uncontradicted, but, I think, fully sustained by the circumstances stated by Willis himself; for hé not only detained the $75, but he drank the gin and kept the other articles which he got from plaintiff in payment for the note I think too that there was error in charging the jury that the full value of the note was not always the sum expressed on its face, but the sum it was bona fide worth, and that a note was a fair subject of bargain and sale, and after fixing the true value in their minds, they should say whether the payment to Willis was equivalent to that value, and if it was, then there was no usury in the case.” I am not disposed ■to call in question the correctness of this rule, so far as it applies to notes originally founded on a legal consideration and sent into circulation; for nineteen twentieths of the commerce of the world is carried on through the agency of these and like securities, and when' once they are legally in the market, they become the fair subject of tiaffick. But to apply.it to the creation of a note, would strike at the very root of the statute against usury. The commercial value of negotiable paper, when in the market, is determined sometimes by the probable solveney of the drawers and indorsers; sometimes by their character for punctuality. The time and place of payment, «also have their influence ; sometimes they are sold ata *406 discount, and often command a premium. The statute, however, makes none of these distinctions : loans to the rich and the poor, tjie prompt and the tardy, are all put on the same footing, nor is time or pace of any consequence, except so far as time is necessary to measure the amount of interest. Every contract reserving interest at a greater rate than seven per cent, per annum, is declared to be void. The Jury might then have been misled by this charge, and for these reasons a new trial is granted.

New trial granted.